Baptist Church v. Church Mutual Insurance Company Mr. Hunsicker Thank you to the panel and may it please the court My name is Scott Hunsicker. I represent an historic church here in Chicago, Olivet Baptist Church The fact that it is an older and historic church is frankly of no moment in this matter It's their role as a policyholder This matter before the court, this issue before the court, singularly defined by the order that granted summary judgment is that it's a causation case This is a first party dispute between a policyholder and its insurance company The insurance company in this case is Church Mutual Insurance Company that had a policy issued to the historic church to cover it for certain items of damage The question in this case is whether there was evidence that would give rise to a material issue of fact in regard to whether that causation link was there and whether there were damages that resulted In the present case, the matter before you has a date of loss of March 1, 2011 That date has been of serious analysis in this entire matter and there is both expert and fact witness testimony that shows why this was a covered loss Specifically at the summary judgment standard, the argument that was made by opposing counsel was that there was not a link between any of the damage that occurred at the church and between evidence that would show it was from something the policy covered Now, frankly, the law has been very well settled that as a policyholder there is a duty to show something is covered Then the duty would flip over to the insurance company to show there was an exclusion that applied We really don't have a legal question in this case It's a pure question of fact about whether there is evidence from which a reasonable fact finder could conclude that could find in your favor on the causation question, whether this loss was caused by a windstorm and your submission in the district court, much of it was excluded That's the main impediment that you have here because you didn't comply with the local rule 56.1b to submit something in opposition to the insurance company's The court deemed all of the insurance company's factual recitations admitted and then your two purported experts were excluded as were at least one of your fact witnesses, leaving very little for you to hang your hat on You're correct, Judge Sykes, it was an issue of fact We feel that despite the language of the court order that based on the law that relates to the rule 56 supplying of the facts at issue that it was in fact complied with for just a number of reasons Number one, the law is longstanding under the law that was cited within the court order under the case of Stebno v. Fraser, Flint v. City of Belvedere that there is discretion for the court to consider matters such as this where there have been additional facts included as long as it's done to clarify summary judgment findings essentially cut to the heart of the matter and while the order does in fact address the contested issue of facts it also begins the discussion by correctly reflecting the rule 56 understands that there still has to be by the movement the burden to show why summary judgment should be granted those considerations are in favor of the non-movement which is all of it in this case and if I may in this regard, the case law in regard to what the judge had stricken shows that it should have been included because it is intended not to allow for global generalizations it's intended not to allow somebody to essentially not be succinct, not be concise regarding what the evidence is and how it relates to the issue at hand the issue at hand is well defined, the causal relationship everything that was supplied that showed why these contested issues existed were broken up into fact witnesses versus expert witnesses the fact that some of the expert information was not considered by the court we also feel was an error, Judge Sykes and that is because under the Daubert standards which again has been understood by the court all the way back to U.S. versus Romero and Medivante Corp versus Immigrant Savings Bank that when you're not dealing with something that is necessarily scientific it's an insurance adjuster, a public adjuster it's somebody where it's not going to be as precise that it is more of what the court had called a flexible standard in this case, the testimony that came from Tom Ermeter who was the causation expert for the plaintiff in this case and Shannon Cook showed that there had been an evaluation done that met the four standards of Daubert number one, you had somebody who had a background expertise in the area from years within the industry number two, they had data that they were relying on and did research in regard to the case number three, they had a methodology that they used to interpret that data and number four, there was nothing offensive about the conclusions they drew when you took that data in light of that methodology so what they did in this case was very simple the issue came down to the March 1, 2011 storm what Mr. Ermeter had said was that the cause of the loss, if you look at what's covered under the policy is you can have the infiltration by water, snow, hail that causes damage, for instance, to an interior this was pointed out by the court in their order the question is, did it happen from something else that was due to, say, a hail or windstorm there was evidence in this case of hail or windstorm from both fact and the expert witnesses who had testified regarding this being consistent with hail so that is one of the key distinctions to make it's not about, did the windstorm actually happen on March 1, 2011 the loss happened on that day because of compromisation of the roof and the before and after effect of what existed as damage before and then after March 1, when there was water infiltration into the roof now, how was it that that was actually discerned individuals that are there, deacons who are actually present, Deacon Arnold Romeo and Deacon Eugene King had both testified, and by the way we will absolutely concede neither one of these gentlemen are engineers neither one of them are meteorologists Romeo was excluded as a discovery sanction Romeo was excluded to the extent that anything afterwards didn't come in he had already given two depositions in the case at that time but Judge Sykes, I would submit that even if you wanted to take Deacon Arnold Romeo out of it you still have the testimony of the experts which on page 5 of the order was conceded are still in the case because it hadn't reached that deadline in the discovery yet and when those individuals are looked at they provided two different things number one, they provided an analysis of what the damage would be for the sanctuary and number two, they provided a link between those damages and what caused it and that was for Mr. Ermitter what happened was, he was able to show that because prior to March 1, 2011 there had not been, even though there had been storm conditions there had not been, Judge Sykes the infiltration of water until afterwards then the damage, the loss occurred when that infiltration began and it was conspicuous if you want to just look at the testimony of for instance, Deacon Eugene King then that was someone who said yes even though he is agreeing with Mr. Deacon Romeo he also said that this is a different situation in the sanctuary, on the pews he saw them with his own eyes and the law also states and I think this is a key distinction that was in error when the court wrote its opinion at the district level, Judge Sykes was you can have an expert that might be able to opine on something that they didn't perceive or they didn't initially view you can't have a layperson that does that but what they missed was the actual testimony of Mr. King Deacon King who did actually perceive it he had that visual appreciation with his own eyes and because of that, what you had was the before and after plus, you also had the testimony of Mr. I'm sorry, Mr. Ermitter who was able to link the two in regard to damages there was also a remark in there about the ACV and RCV but there had been explained in depositions that the RCV amount and I see I'm getting into my rebuttal time ACV amounts actual cash value versus RCV is a RCV amount minus the depreciation the RCV was given he would have been able to testify as to ACV but it's a function of the RCV which constitutes evidence for damages if I may, I'd like to reserve I know I only have a couple minutes to reserve if I may reserve my time surely Ms. Mock May it please the court I'm Eric Mock, I'm here on behalf of Church Mutual today and the issue before the panel today is quite simple should you affirm summary judgment in favor of Church Mutual you should notwithstanding what we've just heard this case is not so broadly phrased as one of insurance coverage certainly not anymore, it started out that way but it no longer is as it exists before the panel today the question is simply what is the appropriate consequence when despite five motions to compel a party to litigation doesn't demonstrate the minimum level of diligence necessary to put forth any evidence to support any elements of its claim and then fails to comply with very clear, long-standing and binding local rules governing summary judgment practice the district court determined that the appropriate consequence of summary judgment Church Mutual urges you to agree and affirm we do know that the district court could have found on either of two bases but articulated two first and foremost there's the procedural prong of the district court summary judgment Church Mutual supported its summary judgment motion with 75 statements of undisputed fact under local rule if those 75 statements were deemed admitted it would have completely gutted Olivet's case it would have completely extinguished every element of Olivet's case Olivet never responded as it was required to under 56 B3B which required it to articulate an enumerated response to all 75 of those statements what Olivet did instead is it served what it referred to as a global response which in fact didn't enumerate any in any fashion which of the 75 statements Olivet was referring to it didn't contain any record citations and viewed most charitably this panel couldn't sort through and figure out which of the 75 statements are being rebutted nor could the district court more importantly the local rules neither in the letter or spirit allow for this sort of globalized thematic response it was a complete breach and a failure to comply with the local rule that basis was amply supported and it was self evident and the 7th circuit authority certainly supports it and the district court was well within its rights to enter summary judgment on that basis because once the district court deemed all those 75 statements and admitted as it had to at that point quite frankly there was nothing left every element of Olivet's case was effectively procedurally extinguished. I'll note further that Olivet didn't contest that basis of the district court's decision in its appellate briefing. I submit to you that that's forfeiture. We can move beyond the procedural grounds. The district court also went farther and looked at the evidence that Olivet did adduce. Despite the 5 requests or the 5 motions that compel all of which were granted the last one culminating in a barring order that Judge Maravich entered stating that by January 7th of 2015 I believe there could be no more evidence on causation of damages. The district court went beyond and looked at the record the factual and evidentiary record and determined that in fact no witnesses at Olivet put forth at the summary judgment point in time and none of the evidence established a single one of Olivet's elements which quite of course had to demonstrate that a windstorm occurred on or about March 1st, 2011. There's absolutely not a question of fact in the record establishing that. Olivet then had to demonstrate or at least raise a question of fact that that windstorm caused damage to the exterior of the church resulting in damage to the physical envelope allowing water to penetrate. There wasn't a single scintilla of question, of evidence of fact. Olivet then had to demonstrate that because of that windstorm caused damage to the exterior of the water did in fact infiltrate and damage the interior. There wasn't anything in the record supporting that element. And then finally Olivet had to demonstrate that as a consequence of that occurrence it suffered damages which it could articulate in actual cash value that's the contractual measure of damages. And it couldn't do that. In fact when Church Mutual raised that argument in its summary judgment motion Olivet didn't even address it in the district court, determined that on the actual cash value, the contractual measure of damages issue Olivet forfeited that. So there are two independent bases both of which independently sustain the district court summary judgment. Church Mutual believes this is simply a straight ahead case in that the panel should affirm on both and if there are no questions I'll yield the balance. Thank you. If I may proceed. Picking up on the allegation that there was nothing disputed in regard to this list of facts once again the issue in this case is was there a causal relationship between the damage and between the underlying event. Specifically the exact issues of fact, the disputed issues that were submitted by Olivet in this case spoke only to that issue because it was the only issue that was going to be dispositive of the entire motion. Now we specifically in our reply and I understand what my opposing counsel is saying but I actually went through and explained why a lot of them had not had any issue it's because we were in agreement with them. When they said for instance that I'll give the court an example Kevin Moore who worked as a photographer they remarked that they had made the statement that he had no factual knowledge regarding whether there had been an event and if it had any causal effect. We said we agree he was a photographer he didn't have that. There were other individuals that also didn't have anything of consequence except a bit role or a peripheral responsibility like a photographer in the case and we'd agreed with that. The fact that they put when the policy was when the policy incepted and those issues we did agree with them. The fact of the matter is when we responded we supplied the fact witnesses and we also supplied the expert witnesses and Judge Sykes had pointed out before what about the fact that part of the Deacon Romeo information had been excluded. Regardless of how you look at this regardless of what you consider the evidence in this case from an expert who had relied upon other individuals who had seen this damage at the time who had done background research on weather events who had actually toured the actual superstructure of the property and been able to evaluate when this happened was able to have conclusions that dovetailed exactly with what the fact witnesses stated. Before that date they didn't have this damages. Afterwards they did. I see that I believe my time is up unless there's any further questions. I appreciate the court's consideration. Thank you. Thanks both counsel. The case is taken under advisement. The court is standing.